IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
(COLUMBIA DIVISION)

ANTONIO CABALLERO,                    CASE NO.: 3:20-cv-04485-MGL

     Plaintiff,

v.

FUERZAS ARMADAS
REVOLUCIONARIAS DE COLOMBIA,
a/k/a FARC-EP a/k/a REVOLUTIONARY
ARMED FORCES OF COLOMBIA; and THE
NORTE DE VALLE CARTEL,

     Defendants,

v.

BANK OF AMERICA, N.A.

     Garnishee.

_____/

### PLAINTIFF, ANTONIO CABALLERO'S OPPOSITION TO PETROLEOS DE VENEZUELA, S.A.'S LIMITED MOTION TO INTERVENE AND INCORPORATED MEMORANDUM OF LAW

Plaintiff Antonio Caballero ("Caballero"), by and through undersigned counsel, hereby provides his memorandum in opposition to Petroleos de Venezuela, S.A.'s ("PdVSA") Limited Motion to Intervene (the "Motion") (Dkt. 37), which requests that the Court: (i) allow PdVSA to intervene, (ii) set aside the South Carolina State Court's[1] November 23, 2020 Order finding that PdVSA is an agent or instrumentality of the FARC[2] (Dkt. 1-8 at 6-9) (the "State Court Order"), and (iii) dissolve the writ of garnishment served upon Garnishee Bank of America, N.A. ("BANA"). Herein, we explain why the Court should not grant PdVSA any of the relief it seeks

---

[1] The "South Carolina State Court" refers to *Caballero v. FARC, et al.,* Case No. 2020CP4003495.
[2] "FARC" refers to the Fuerzas Armadas Revolucionarias de Colombia, A/K/A FARC-EP A/K/A Revolutionary Armed Forces of Colombia.

and why PdVSA's appearance should not alter a victim of terror's rights (i.e., Caballero's rights) to satisfy his judgment, in part, from assets blocked by the United States government.

## I. Overview

Nearly two years ago, PdVSA abandoned its efforts in Caballero's original state court action to challenge Caballero's ample evidence that PdVSA is an agent and instrumentality of the FARC. Up until approximately three weeks ago (in a related, but separate garnishment proceeding), counsel for Caballero had not heard from any PdVSA attorney in relation to the original state court action or any other action. Now, PdVSA – an entity sanctioned by the United States government – has once again appeared, in an attempt to invalidate the State Court's Order on agent and instrumentality status without proffering any concrete evidence contradicting such finding – all while playing games with the United States Court system and avoiding its jurisdiction.

PdVSA seeks to raise vaguely described "jurisdictional" defenses and also asks for the opportunity to challenge the South Carolina State Court's correct determination, in line with the rulings of several other federal courts, that PdVSA is an agent or instrumentality of the FARC. *See* Dkt. 11 at 2 n. 2, 8. This Court should not allow PdVSA to avoid the jurisdiction of this Court while it, at the same time, asks this Court to make a substantive determination that it is not an agent and instrumentality of the FARC. Put another way, unless PdVSA immediately consents to the personal jurisdiction of this Court and agrees that this Court is an appropriate venue for depositions and other discovery, if necessary, to occur, this Court should deny PdVSA's request for intervention and request to challenge the State Court's Order and subsequent writ of garnishment.

If, however, this Court were to grant PdVSA's request for intervention (and it should not), then, at a minimum, this Court should overrule PdVSA's "jurisdictional" defenses. As discussed

below, it is black letter law that a party seeking intervention consents to the personal jurisdiction of the Court and waives any arguments to venue.

Herein, Caballero further addresses the absurd argument that he is somehow "hiding" (Dkt. 11 at 6) behind the Terrorism Risk Insurance Act of 2002 ("TRIA") – a terrorist victim recovery maximization statute.    Relevant case law   confirms that, PdVSA received notice of this garnishment proceeding at the appropriate time (*i.e.,* after attachment, but before turnover).

Furthermore, the reality is that, at this stage of the proceedings, the burden of proof is on PdVSA to "rebut" the State Court Order on agent and instrumentality status.  Put another way, Caballero satisfied his burden when he submitted ample evidence to the South Carolina State Court, resulting in the State Court Order.   PdVSA's bald assertions that Caballero's proof, including submissions of a former expert, routinely used by United States law enforcement, is somehow deficient is ridiculous.  PdVSA has not submitted a single pleading, an affidavit, or a scintilla of evidence rebutting the findings of the United States government, Mr. McBrien, and others.  Indeed, PdVSA's failure to file a "pleading that sets out the claim or defense for which intervention is sought" is in direct violation of Rule 24(c) of the Federal Rules of Civil Procedure, which provides that PdVSA "must" accompany its motion to intervene with such a pleading. Absent any concrete evidence from PdVSA, this Court should not disturb the well-reasoned agent and instrumentality finding of the South Carolina State Court.

## II.     Procedural History

### A.  The Florida State Court Action

In December 2012, Caballero commenced an action in Florida state court against the FARC, the Norte de Valle Cartel ("NDVC"), and the Ejercito de Liberacion Nacional ("ELN") under various theories of recovery, including the Alien Tort Statute (hereinafter referred to as the

"ATS Action").[3]   After the defendants failed to appear and defaults were entered, the Florida trial court held a trial on damages and also requested and received briefing on Caballero's request that the final judgment against the defendants also name agents or instrumentalities of the Defendants so that Caballero could proceed to collect his final judgment from such agents or instrumentalities under TRIA. *See* Appellate Brief filed in ATS Action, *Caballero v. FARC et al.,* Case No. 19-cv-04011-KES (D.S.D), Dkt. 15-3 at 11-13.

On November 18, 2014, the Florida trial court entered a 274-page final judgment against the Defendants and also included findings regarding agents and instrumentalities listed on approximately 175 pages of exhibits to the final judgment. *See* ATS Final Judgment, *Caballero v. FARC, et al.,* Case No. 18-cv-25337-Moore (S.D. Fla.), Dkt. 1-1.   PdVSA was not included in ATS Action final judgment as an agent or instrumentality of any of the defendants.   Caballero's collection efforts on his ATS judgment proceeded for several years in the Florida state court and in other courts.   On April 11, 2019, Caballero filed a motion in his ATS Action for the Court to determine that PdVSA was an agent or instrumentality of the FARC.   Caballero supported his motion with the affidavit of Dr. Bruce Bagley, a renowned expert used by many law enforcement agencies of the United States when prosecuting narco-terrorists.   Caballero addresses PdVSA's attack on Dr. Bagley below, but first explains how PdVSA moved to intervene in the ATS Action and then abandoned its challenge of Caballero's assertion that it is an agent or instrumentality of the FARC.

Prior to a scheduled hearing on Caballero's motion, PdVSA, through counsel, appeared in the ATS Action, and on May 24, 2019, attempted to remove the motion to federal court. *See*

---

[3] Several volumes from the ATS Action were filed in various federal court proceedings and so for ease of reference Caballero cites herein to such filings so that the Court can view same on Pacer in lieu of such papers all being refiled in this action.

4

*Caballero v. FARC et al.*, 19-cv-22143-RNS (S.D. Fla.). Within days of PdVSA's removal and without the filing of any motion by Caballero, Judge Scola of the United States District Court for the Southern District of Florida remanded PdVSA back to state court, finding that PdVSA's removal of a motion for determination was not proper as it was not even a party to the ATS Action. *See* June 6, 2019 Order, *Caballero v. FARC et al.*, 19-cv-22143-RNS (S.D. Fla.), Dkt. 3.

Upon remand, PdVSA moved to intervene in the ATS Action making many of the very same arguments it now makes to this Court. *See* **Exhibit 1** hereto. It immediately set a hearing on its Motion to Intervene, and then in consultation with counsel for Caballero on July 18, 2019, cancelled the hearing due to a Judge not being assigned to the division in which the case sat. *See* **Exhibit 2** hereto. PdVSA took no further action in the ATS Action, and its motion remains pending, and undecided, in the ATS Action. This was clearly PdVSA's opportunity to challenge Caballero's allegations, but PdVSA abandoned its efforts, and undersigned counsel did not hear again from counsel for PdVSA for over one-and-a-half (1 ½) years. In fact, since July 2019, up until approximately three weeks ago (in a related but separate garnishment proceeding), PdVSA's counsel had not appeared in any other court related to Caballero's collections, and Caballero's counsel had not interacted with any PdVSA attorney in this action, nor any other action. Moreover, since the July 2019 interaction in the now dormant ATS Action, up until approximately three weeks ago, PdVSA itself had not appeared in any collection action.

What happened just before PdVSA abandoned its agent or instrumentality challenge in July of 2019? On January 28, 2019, the United States government itself sanctioned PdVSA and designated it as a blocked party such that any person, including lawyers, would need a license to receive payment from PdVSA (with the exception of terrorism victims pursuing collections under TRIA). Thus, it is understandable why the lawyers for PdVSA disappeared and, in light of the

actions of the United States government, abandoned PdVSA's motion to intervene and arguments on it being an agent or instrumentality of FARC and did not participate further in any way in any case involving Caballero.

We turn briefly to PdVSA's irrelevant attack on Dr. Bruce Bagley. As explained to the District Court of South Dakota[4] - where another party attempted to attack Dr. Bagley as PdVSA does here - Dr. Bagley was considered one of the foremost experts on counternarcotics efforts and money laundering whose expertise has often been sought by many, including the United Nations, the F.B.I., the Drug Enforcement Administration, members of the U.S. Congress, and several Latin American governments such as the governments of Colombia, Ecuador, Bolivia, Panama, and Mexico.[5]  Dr. Bagley has also served as an expert witness for high-profile trials, including most recently on behalf of Johnson & Johnson, which was being sued for its role in the opioid crisis.[6] He also regularly appeared in the media, for example, in The Washington Post about cocaine trafficking in Panama as a "University of Miami money laundering specialist."[7] And, news outlets, including the New York Times and NPR, sought out his thoughts on topics related to drug trafficking overseas.[8]  Robert McBrien, whose sworn declarations have been presented to this

---

[4] *See Wells Fargo, N.A. v. Caballero, et al.*, Case No. 19-cv-04141-KES (D.S.D.), Dkt. 71 at 11-17.

[5] *See* Michael Gold, *Professor Who Is Corruption Expert Accused on Laundering $2.5 Million*, THE NEW YORK TIMES, https://www.nytimes.com/2019/11/18/nyregion/bruce-bagley-money-laundering-venezuela.html (last visited Nov. 22, 2019) (citing https://maia.as.miami.edu/_assets/pdf/changing-landscape-of-international-security-2018.pdf); *see also* Vanessa Romo, *U.S. Arrests Money-Laundering Expert For Laundering Money*, NPR, https://www.npr.org/2019/11/19/780877837/u-s-arrests-money-laundering-expert-for-laundering-money (last visited Nov. 22, 2019); Antonio Noori Farzan, *He Was the Go-To Expert on Money Laundering. Now He's Been Charged With Laundering Money*, https://www.washingtonpost.com/nation/2019/11/19/bruce-bagley-money-laundering-university-miami-expert/ (last visited Nov. 22, 2019).

[6] *See* Vanessa Romo, *supra* at n. 5.

[7] *See* Antonio Noori Farzan, *supra* at n. 5.

[8] *Id.*

Court, reviewed Dr. Bagley's affidavits submitted in the South Dakota action and found them to be correct.

### B.  The Federal Court Action

On October 3, 2018, the ATA was clarified to allow holders of ATA judgments (but not ATS judgments) to collect under TRIA from the blocked assets of Specially Designated Narcotics Trafficking Kingpins ("SDNTK") whose assets were not previously available to holders of either ATS or ATA judgments.  After he obtained his final judgment in the ATS Action, Caballero became a United States citizen and thereafter proceeded in federal court to obtain his ATA judgment, which would allow him to satisfy his judgment from the putative assets of agents or instrumentalities blocked as SDNTKs.  Caballero filed his action on December 19, 2018 in the United States District Court for the Southern District of Florida.  After Caballero was able to satisfy the Court that he had served FARC and NDVC, Caballero dropped ELN as a defendant (because he was not able to serve it) and requested that the Court enter judgment against the FARC and NDVC.  Caballero was not required to add PdVSA, or any other agent or instrumentality of the FARC, as a party to the action.

As this Court is familiar from the record in this action, Chief Judge Moore entered the ATA Final Judgment on May 20, 2020.  Caballero subsequently domesticated his ATA Final Judgment before this Court and several other courts.  Since then, Caballero has obtained several agent or instrumentality rulings against various parties, including PdVSA and/or PdVSA subsidiaries.[9]  *See e.g.* State Court Order, Dkt. 1-8 at 6-9 (determining PdVSA to be an agent and instrumentality of the FARC); Decision and Order, *Caballero v. FARC, et al.,* No. 20-mc-00040-LJV (W.D.N.Y.

---

[9] Orders relating to PdVSA subsidiaries are significant.  Having ruled that a subsidiary of PdVSA is an agent an instrumentality of the FARC, it follows that the parent company – i.e. PdVSA itself – is also an agent and instrumentality of the FARC.

Dec. 18, 2020), Dkt. 15 at 11 (same), attached hereto as **Exhibit 3**; Temporary Restraining Order

Freezing Account Pending Hearing on Application for Turnover Order, *Caballero v. FARC, et al.,*

No. 20-cv-01939-RNC (D. Ct. Dec. 23, 2020), Dkt. 43 at 2 (determining that PdVSA is an agent

and instrumentality of the FARC and that a PdVSA subsidiary "is a blocked party for purposes of

TRIA execution"), attached hereto as **Exhibit 4**; Decision and Order, *Caballero v. FARC, et al.,*

No. 20-mc-00040-LJV (W.D.N.Y. Jan. 29, 2021), Dkt. 33 at 9-10 (determining multiple PdVSA

subsidiaries to be agents and instrumentalities of the FARC), attached hereto as **Exhibit 5**.

 Significantly, other TRIA judgment creditors (*i.e.,* Stansell and Pescatore)[10] have obtained

their own agent or instrumentality rulings against PdVSA and/or PdVSA subsidiaries. *See e.g.*

Docket Report, *Stansell, et al. v. FARC, et al.,* No. 16-mc-00405-ALC[11] (reflecting the following

text entry at Dkt. 114: "…***the court finds that the OFAC IEEPA sanctioned <u>PDVSA subsidiaries</u>***

(identified in plaintiffs' Motion DE 111, p. 21) ***<u>are each an agency or instrumentality of the</u>***

***<u>FARC</u>, and their blocked assets are therefore subject to attachment and execution pursuant to***

***TRIA***") (emphasis added), attached hereto as **Exhibit 6**; Docket Report, *Pescatore, et al. v. FARC,*

*et al.,* No. 18-mc-00545-ALC[12] (reflecting a similar text entry at Dkt. 40), attached hereto as

**Exhibit 7**; Mem. of Law in Support of Mot. for TRIA Turnover, Stansell SDNY Action, Dkt. 122

at 8, Dkt. 137 at 9, Dkt. 142 at 8, Dkt. 146 at 8, Dkt. 148 at 8 (seeking turnover of blocked assets

in the putative name of PdVSA subsidiary(ies), whose assets were previously determined by the

court to be blocked for TRIA execution purposes); Mem. of Law in Support of Mot. for TRIA

---

[10] The Stansell and Pescatore judgment creditors "have entered into a Joint Prosecution & Sharing Agreement." *See Stansell v. FARC, et al.,* No. 19-cv-20896-RNS (S.D. Fla. Mar. 7, 2019), Dkt. 65 at 2.
[11] Hereafter, the "Stansell SDNY Action."
[12] Hereafter, the "Pescatore SDNY Action."

Turnover, Pescatore SDNY Action, Dkt. 49 at 8; Dkt. 63 at 6; Dkt. 69 at 16; Dkt. 73 at 8; Dkt. 75 at 8 (same).

Notably, until approximately three weeks ago,[13] PdVSA had not appeared in any of such recent collection actions, to undersigned counsel's knowledge.  Again, the last appearance prior to three weeks ago, to undersigned counsel's knowledge, was the abandoned efforts noted above.

### III.    Memorandum of Law

### A.  PdVSA has Consented to the Jurisdiction of the Court and to Venue

It is nonsensical that PdVSA seeks to be made a party to this action via intervention, but at the same time refuses to acknowledge that this Court has jurisdiction over it or the subject matter of this case, and that venue is proper.  Even if PdVSA lacks significant contacts with this jurisdiction, by voluntarily seeking intervention and to be made a party to this case in order to protect its alleged interest in an asset located within this Court's jurisdiction, it follows that it must submit to the jurisdiction of this Court, and thereafter comply within this District with any discovery requests (if necessary) served by Caballero, and appear in person for any evidentiary hearing (should this Court decide to hold one).

That PdVSA seeks to raise vaguely described "jurisdictional issues" is anathema to asking this Court for substantive relief.  PdVSA cannot seek to reap the benefits of this jurisdiction's legal system and financial sector, and at the same time, contest jurisdiction over it and refuse the corresponding obligations.

---

[13] Approximately three weeks ago, PdVSA moved to intervene in a separate garnishment proceeding in the Western District of New York. *See Caballero v. FARC, et al.,* No. 20-mc-00040-LJV (W.D.N.Y. Feb. 2, 2021), D.E. 37.  The court subsequently allowed PdVSA to intervene without issuing a substantive opinion. *Id.* at D.E. 39.  Caballero disagrees with the court's text order.

That PdVSA seeks to play games and avoid this Court's powers over it is obvious from its filings to this Court.  In its motion to intervene, PdVSA repeatedly notes that it is "seeking limited intervention" (Dkt. 11 at 2 n. 2), "does not waive and specifically reserves all jurisdictional defenses" (*id.*), and wishes "to be heard on its jurisdictional defenses and, if necessary, to rebut Plaintiff's assertions of agency and instrumentality" (*id.* at 8).

So why does PdVSA seek to avoid this Court's jurisdiction? Put simply, because it is a sanctioned organization run by individuals who have also been sanctioned (and some indicted ) by the United States.  Therefore, neither PdVSA nor its officers wish to appear in the United States, but nevertheless seek to avail themselves of the protection of the United States courts and the United States financial system.

Fortunately, case law is clear that PdVSA's improper attempts to outmaneuver this Court's legal system and U.S. sanctions law are simply impermissible.  By voluntarily seeking intervention and to be made a party to this case, it follows that PdVSA must fully submit – at the very least – to the personal jurisdiction of this Court and to venue. *See Team Worldwide Corp. v. Wal-Mart Stores, Inc.,* 287 F. Supp. 3d 651, 659-661 (E.D. Tex. 2018) ("***[T]he Supreme Court has held that intervenors cannot question venue***, where a defendant has not exercised that privilege." (emphasis added) (*citing Cent. Trust Co. v. McGeorge,* 151 U.S. 129 (1894))).  Indeed, such is the law in a sister court in this Circuit. *See Beam Laser Sys. v. Cox Communs., Inc.*, 117 F. Supp. 2d 515, 517 (E.D. Va. 2000)[14] ("There is authority for the proposition that, as an intervenor, SeaChange may not question venue. The court finds this authority persuasive.") (internal quotations and citations omitted).

---

[14] Notably, a review of Fourth Circuit case law reveals no contradiction to this principle.

Furthermore, such law has been echoed in various jurisdictions across the United States. *See e.g.*, *Team Worldwide Corp.,* 287 F. at 659-661 (relying on the law of various jurisdictions and authorities for the holding that an intervenor waives objections to personal jurisdiction and venue); *Trans World Airlines, Inc. v. C.A.B.,* 339 F.2d 56, 63-64 (2d Cir.1964) ("Venue is a privilege personal to a defendant in a civil suit and ***a person intervening on either side of the controversy may not object to improper venue***.") (emphasis added); *Bayshore Ford Trucks Sales, Inc. v. Ford Motor Co. (In re Ford Motor Co.)*, 471 F.3d 1233, 1248 (11th Cir. 2006) ("Westgate challenges the district court's jurisdiction over its person, ***but by filing a successful motion to intervene, it acquiesced to such jurisdiction***.") (citations omitted) (emphasis added); *id.* ("Whereas it would not have been the case absent intervention, ***Westgate willingly submitted to the personal jurisdiction of the district court***…") (citations omitted) (emphasis added); *see also Cty. Sec. Agency v. Ohio DOC*, 296 F.3d 477, 483 (6th Cir. 2002) ("Betzold attempted in his motion to intervene to reserve his right to object to the district court's exercise of personal jurisdiction. This attempt, however, was unsuccessful, because ***a motion to intervene is fundamentally incompatible with an objection to personal jurisdiction***.") (citations omitted) (emphasis added); *United States v. Oregon,* 657 F.2d 1009, 1017 n. 18 (9th Cir. 1981) ("***the court below gained personal jurisdiction over [the applicant] when it intervened***…") (emphasis added); *Inversora v. Energoprojekt Holding Co.,* No. 03-73 (RWR), 2007 U.S. Dist. LEXIS 104202, at *4 (D.D.C. Feb. 22, 2007) (holding that one who intervenes cannot attack personal jurisdiction).

And, such legal principle is also found in other relevant authority. *See* 7C Wright, Miller & Kane, *supra*, § 1920, at 490 ("***[T]he intervenor submits himself to the personal jurisdiction*** of the court by seeking to intervene in the action and cannot move to dismiss on that ground.")

(emphasis added); Wright and Miller, 7C Fed. Prac. & Proc. Civ. § 1918 (3d ed.) ("***The intervenor***

***cannot question venue***. By voluntarily entering the action the intervenor has waived the privilege

not to be required to engage in litigation in that forum.") (emphasis added); Moore's Federal

Practice, § 24.22[3] (3d Ed.) ("***A person who intervenes as plaintiff or defendant may not object***

***to the venue*** chosen for the action. Since the intervenor specifically invoked the jurisdiction of the

court, any potential venue objections are considered waived.") (emphasis added).  Thus, even if

this Court were to grant PdVSA's request for intervention (and it should not given the improper

games PdVSA is playing), the Court should, at a minimum, overrule PdVSA's objections

regarding personal jurisdiction and venue.

In its papers, PdVSA ignores all of the above law.  Instead it cites to one opinion of a

district court. *See* Motion at 2 n.1 (citing *Pescatore v. Palmera Pineda*, No. 08-2245 (RMC), 2019

WL 2173855 at *3-4 (D.D.C May 20, 2019).  However, such opinion does not support PdVSA's

tactics herein of avoiding personal jurisdiction.  Indeed, unlike PdVSA, the *Pescatore* intervenor,

did not contest the court's personal jurisdiction over it.  Rather, the *Pescatore* intervenor sought to

reserve its right to challenge the subject matter jurisdiction and venue of the Court.  The plaintiffs

sought denial of the motion to intervene on that ground alone, and the Court rejected plaintiff's

argument noting that it would decide its own subject matter jurisdiction.  Thus, even if this Court

were to grant PdVSA intervention and allow it to reserve objections regarding subject matter

jurisdiction and venue (and it should not given the overwhelming case law on venue noted above,

as well as BANA's removal, indicating BANA's position that venue herein is proper), PdVSA will

have subjected itself to the personal jurisdiction of this Court and therefore must fully participate

in the discovery process should it raise any factual issues for this Court's determination (and it has

not) that it is an agent or instrumentality of the FARC.  *See Fujikura Ltd. v. Finisar Corp.*, No. 15-

mc-80110-HRL (JSC), 2015 U.S. Dist. LEXIS 135871, at *10 (N.D. Cal. May 14, 2015) ("Once a party has intervened, it is subject to discovery obligations under Rules 30 and 34 just like a party.").

### B. PdVSA was not Entitled to Notice Pre-Attachment

Threaded throughout PdVSA's motion to intervene are aspersions that Caballero has employed "underhanded tactics" in his collection efforts "[w]ithout any notice to PDVSA or its counsel." *See e.g.* Dkt. 11 at 5; *id.* at 10 ("Plaintiff's failure to notify PDVSA of the Motion…resulted in the desired outcome."). But, as previously discussed, since July 2019 – when PdVSA abandoned its efforts to contest its agent and instrumentality status in Caballero's state court action – up until approximately three weeks ago (in a related but separate garnishment proceeding), counsel for Caballero had not heard from any PdVSA attorney in relation to the original state court action or any other action, and neither PdVSA nor any PdVSA attorney had appeared in any other court related to Caballero's collections.

Case law is clear that an agent an instrumentality is not entitled to notice pre-attachment. *Stansell v. Revolutionary Armed Forces of Columbia [sic]* – a seminal case in terror law – clearly disposes of the flawed premise upon which PdVSA's notice argument is based. *Id.,* 771 F.3d 713, 729 (11th Cir. 2014) ("Because the factors weigh in favor of immediate attachment, Claimants were not constitutionally entitled to a hearing before the writ issued. In sum, ***Claimants were entitled to notice and to be heard before execution, <u>though not necessarily before attachment</u>***.") (emphasis added).

The Eleventh Circuit's rationale for not providing claimants with notice pre-attachment is sound. There are various real and significant risks with informing a terrorist that his/her/its assets are being attached:

> During the pendency of execution proceedings, a number of events may occur which make satisfaction using a particular asset impossible. ***Other judgment creditors may seek to execute against the asset. The government may take action that makes the asset unreachable, including seizure or de-listing of the alleged agency or instrumentality (which may or may not be the result of a finding that the SDNT designation was incorrectly reached), the latter of which would enable the asset owner to move the asset (or proceeds from its sale) outside the reach of any United States district court.***

*Id.* (emphasis added).

Significantly, *Stansell* does provide claimants with an opportunity to be heard – *i.e.*, after attachment, but before turnover. Consistent with *Stansell,* on January 9, 2021 - following service of the writ of garnishment upon BANA, but before Caballero moved for turnover of the blocked assets - Caballero mailed to PdVSA a copy of the writ of garnishment to the two addresses provided by the Office of Foreign Assets Control ("OFAC") on the Specially Designated Nationals ("SDN") list. Notably, nowhere in its Motion, does PdVSA assert that it was not served with the writ of garnishment. Instead, PdVSA deceptively asserts that "Plaintiff's counsel did not serve **PDVSA's counsel** with the writ" – even though, as previously discussed, Caballero had no obligation to do so because up until approximately three weeks ago, Caballero had not heard from any PDVSA attorney since July 2019. *See* Dkt. 11 at 6 (emphasis added). Thus, PdVSA received notice of this action at the proper time.

Furthermore, contrary to PdVSA's assertions, PdVSA was not entitled to notice of Caballero's domestication of his judgment pursuant to S.C. Code § 15-35-930 as such section applies only to "judgment debtors" (*i.e.* the FARC and NDVC – not PdVSA or any other agents and instrumentalities). *See* Dkt. 11 at 6. Caballero did, however, notify Judgment Debtors/Defendants FARC and NDVC of the domestication.

### C. PdVSA has Failed to Rebut the State Court Order on Agent and Instrumentality Status and for Writ of Garnishment

After over one-and-a-half (1 ½) years of "radio silence," PdVSA has chosen to appear in this action, but still cannot proffer a shred of evidence contradicting the State Court Order on its agent and instrumentality status. Nor does it attach any pleading to its intervention motion as required by the Federal Rules of Civil Procedure. Worse still - PdVSA misstates the record regarding the evidence supporting the agent and instrumentality determination and confuses the law regarding the burden of proof. *See* Motion, Dkt. 11 at 9 ("requiring Plaintiff to prove his allegations adheres to the Fourth Circuit's strong preference for resolving matters on the merits"). Caballero has already met his burden of proving PdVSA's agent and instrumentality status. Caballero's fulfillment of such burden resulted in the State Court Order. Now, it is PdVSA's burden to "rebut" – as oppose to merely denying – the agent and instrumentality determination.

The Federal Rules of Civil Procedure are explicit. A party seeking intervention "must" provide with its motion to intervene a "pleading that sets out the claim or defense for which intervention is sought." *See* Fed. R. Civ. P. 24 (c). The obligation is on PdVSA to set out its claim or defense – yet it has failed to do so. Courts have denied intervention due to the failure of a proposed intervenor to properly do so. *See e.g. In re Monitronics Int'l*, No. 1:13MD2493, 2015 U.S. Dist. LEXIS 184940, *15 (N.D.W. Va. June 3, 2015) (denying intervention, in part, due to intervener's failure to state specific grounds for intervention and failure to attach a pleading setting forth their claim or defense as required by Rule 24(c)); *Murray Maple Eagle Coal, LLC v. Brenemen*, Civil Action No. 2:19-cv-00433, 2019 U.S. Dist. LEXIS 234609 (S.D. W. Va. July 11, 2019) (denying a motion to intervene, without prejudice, for failure to attach a complaint.).

PdVSA vaguely mentions "jurisdictional defenses" but does not explain them in any way nor provide any support as is required by Rule 24(c). Likewise, PdVSA acknowledges that it has

read the submissions of Robert McBrien, but offers no evidence or even argument as to why it is not an agent or instrumentality of the FARC.  Instead, PdVSA hurls untrue accusations that are easily debunked by the record.

For instance, PdVSA erroneously asserts that Mr. McBrien's declaration "did not include PDVSA" as an agent and instrumentality of FARC. *See* Dkt. 11 at 4. But, in support of such statement, PdVSA references an unrelated declaration filed in Caballero's action in the Southern District of Florida, pertaining to an entirely different agent and instrumentality of the FARC, instead of the declarations filed before the South Carolina State Court, wherein Mr. McBrien *does* identify PdVSA (and various PdVSA subsidiaries) as an agent and instrumentality of the FARC. *See* Motion for Agent or Instrumentality Determination and Issuance of Writs of Garnishment and Incorporated of Law, Dkt. 1-7 at 10-15 (citing to, among other evidence, McBrien declarations attached as Exhibit 2 and 3 to the Motion).[15]  PdVSA further incorrectly argues that McBrien's declarations are "riddled with conclusions based on hearsay and speculation and fail to identify any reliable evidence that PDVSA is an 'agency or instrumentality' of the FARC" [Dkt. 11 at 10], even though the declarations cite to, among other evidence, government publications and federal court orders determining a subsidiary of PdVSA – i.e. Petrocedeño S.A. – to be agent and

---

[15] As part of BANA's removal to this Court, BANA filed the relevant "Motion for Agent or Instrumentality Determination and Issuance of Writs of Garnishment and Incorporated of Law." *See* Dkt. 1-7 at 1-60.  However, it appears that not all of Caballero's exhibits attached to the Motion were included in their entirety in the removal filing, despite having been filed as such in the South Carolina State Court action.  In an abundance of caution, Caballero attaches hereto as **Exhibit 8** a copy of his Motion, including a complete copy of all supporting exhibits, which were filed in the South Carolina State Court Action.  Notably, these exhibits include McBrien declarations relating to PdVSA.  Furthermore, the McBrien declarations themselves attach exhibits to various evidence, including government publications, federal court orders, and PdVSA financial statements.

instrumentality of the FARC.[16] *See* Dkt. 1-7 at 10-15.  Whether PdVSA has simply ignored such evidence or has failed to familiarize itself with Mr. McBrien's declaration is unclear.

PdVSA's attacks of the State Court Order on agent and instrumentality status ignores the consistency between that state court order and the various federal court rulings that PdVSA and/or PdVSA subsidiaries are agents and instrumentalities of the FARC. *See e.g.* Decision and Order, *Caballero v. FARC, et al.,* No. 20-mc-00040-LJV (W.D.N.Y. Dec. 18, 2020), Dkt. 15 at 11 (relating to PdVSA), attached hereto as **Exhibit 3**; Temporary Restraining Order Freezing Account Pending Hearing on Application for Turnover Order, *Caballero v. FARC, et al.,* No. 20-cv-01939-RNC (D. Ct. Dec. 23, 2020), Dkt. 43 at 2 (determining that PdVSA is an agent and instrumentality of the FARC and that a PdVSA subsidiary "is a blocked party for purposes of TRIA execution"), attached hereto as **Exhibit 4**; Decision and Order, *Caballero v. FARC, et al.,* No. 20-mc-00040-LJV (W.D.N.Y. Jan. 29, 2021), Dkt. 33 at 9-10 (relating to PdVSA subsidiaries), attached hereto as **Exhibit 5**; Docket Report, Stansell SDNY Action (relating to PdVSA subsidiaries at Dkt. 114), attached hereto as **Exhibit 6**; Docket Report, Pescatore SDNY Action (same at Dkt. 40), attached hereto as **Exhibit 7**.[17]

It is unquestionably PdVSA's burden to rebut a finding that it is an agent or instrumentality of the FARC.  *See* Report and Recommendation on Movant's Motions to Dissolve and Motion for Summary Judgment, *Stansell v. FARC, et al.,* No. 19-cv-20896 (S.D. Fla. Aug. 21, 2019), D.E.

---

[16] As previously noted, if a subsidiary of PdVSA is determined to be an agent an instrumentality of the FARC, it follows that the parent company – i.e. PdVSA itself – is also an agent and instrumentality of the FARC.

[17] *See also* Mem. of Law in Support of Mot. for TRIA Turnover, Stansell SDNY Action, Dkt. 122 at 8, Dkt. 137 at 9, Dkt. 142 at 8, Dkt. 146 at 8, Dkt. 148 at 8 (seeking turnover of blocked assets in the putative name of PdVSA subsidiary(ies), whose assets were previously determined by the court to be blocked for TRIA execution purposes); Mem. of Law in Support of Mot. for TRIA Turnover, Pescatore SDNY Action, Dkt. 49 at 8; Dkt. 63 at 6; Dkt. 69 at 16; Dkt. 73 at 8; Dkt. 75 at 8 (same).

248 at 21-22 ("***Along these lines, we find that Movants have failed to create a genuine dispute*** ***over a material fact that requires a jury to resolve the conflict. At best, Movants' evidence serves*** ***as a denial of the allegations – not a rebuttal.***") (emphasis added), *adopted by* Order Adopting Report and Recommendation, *Stansell v. FARC, et al.,* No. 19-cv-20896 (S.D. Fla. Sept. 26, 2019), D.E. 279.

PdVSA's threadbare filings are grossly inadequate to warrant further proceedings on this Court's agent or instrumentality determination.  In a garnishment proceeding involving another TRIA judgment creditor (*i.e.,* the Stansells) and agent and instrumentality of the FARC (*i.e.,* Samark Jose Lopez Bello, hereafter "Lopez Bello"), the District Court for the Southern District of Florida rejected a claimant's argument that he was entitled to jury trial on the *ex parte* agent and instrumentality determination:

> ***Faced with such a predicament, Lopez Bello attempts to argue that*** ***his own evidence, at minimum, raises a factual dispute as to the truth of*** ***Plaintiffs' allegations, and that the agency or instrumentality issue must*** ***be decided by a jury.*** Fla. Stat. § 77.07(2) ("On such motion this issue shall be tried, and if the allegation in plaintiff's motion which is denied is not proved to be true, the garnishment shall be dissolved."). ***While Movants are*** ***correct that Florida garnishment law provides for jury trials in such*** ***actions***, *see id.*; § 77.08, ***the Eleventh Circuit has also held that*** ***"the right*** ***to a jury trial in a garnishment action is not absolute***, notwithstanding the statute's use of the word 'shall.' " *Zelaya/Capital Intern. Judgment, LLC v.* *Zelaya*, 769 F.3d 1296, 1304 (11th Cir. 2014); *cf.* Fla. Stat. § 77.07(1) ("The defendant, by motion, may obtain the dissolution of a writ of garnishment *unless the petitioner proves the grounds upon which the writ was issued*[.]") (emphasis added).
>
> ***Along these lines, we find that Movants have failed to create a*** ***genuine dispute over a material fact that requires a jury to resolve the*** ***conflict. At best, Movants' evidence serves as a denial of the allegations –*** ***not a rebuttal. This distinction is key; in order for the matter to be tried,*** ***Lopez Bello's evidence must create a genuine issue of material fact as to*** ***his status as an agency or instrumentality of the FARC, especially in the*** ***face of such strong evidence submitted by Plaintiffs. Lopez Bello fails.***

> ***We are simply past the point of dealing with mere allegations; at this stage of the proceedings, and as discussed in detail above, Plaintiffs have not only alleged that Lopez Bello is an agency or instrumentality of the FARC, but shown – with competent, reliable evidence and testimony – this to actually be true.*** *See* Fla. Stat. 77.07(1) (dissolution of writ of garnishment must take place *unless* the petitioner proves the grounds upon which the writ was issued). The evidence establishes that (1) OFAC deemed Lopez Bello to be the "frontman" for El Aissami; (2) El Aissami had previously been connected to both Barrerra Barrera and the Cartel of the Suns; and (3) both Barrerra Barrera and the Cartel of the Suns have been accused by OFAC of supporting and assisting the FARC's narco-trafficking activities. We simply do not see anything that would allow us to dissolve the writs of garnishment in the face of such evidence. *Cf. Doug Sears Consulting, Inc. v. ATS Servs, Inc.*, 752 So. 2d 668, 669-670 (Fla. 1st DCA 2000) (reversing trial court's refusal to dissolve writ in light of "woefully insufficient" evidence submitted to prove statutory grounds for issuance of the writs).
>
> ***Stated as simply as possible, Movants have not only failed to convince us that Plaintiffs' allegations are untrue, see Fla. Stat. § 77.07(2), but Plaintiffs' claims have been proven***. *See Stansell*, 771 F.3d at 742; *cf. Doug Sears Consulting*, 752 So. 2d at 670 (finding insufficient a single affidavit used to support allegations because statements in affidavit were inadmissible hearsay and party seeking to dissolve writ did not have ability to cross-examine the witness). In light of the evidence before us, we find that dissolution of the writs would be improper under Fla. Stat. § 77.07(1), as Plaintiffs have established that the "grounds upon which the writ was issued" are indeed true.

Report and Recommendation on Movant's Motions to Dissolve and Motion for Summary Judgment, *Stansell v. FARC, et al.,* No. 19-cv-20896 (S.D. Fla. Aug. 21, 2019), D.E. 248 at 21-23 (emphasis added), *adopted by* Order Adopting Report and Recommendation, *Stansell v. FARC, et al.,* No. 19-cv-20896 (S.D. Fla. Sept. 26, 2019), D.E. 279.

Like the agent or instrumentality determination in *Stansell* above [*id.* at 10-11], the agent or instrumentality determination here was properly made *ex parte* and was based on substantial evidence, including government publications. Moreover, like Lopez Bello's protestations in *Stansell,* PdVSA's vague arguments made in its Motion cannot be deemed a "rebuttal," but rather a mere insufficient "denial."

### a. PdVSA's ownership arguments miss the mark

PdVSA's arguments that Caballero "is seeking the garnishment of assets from companies that it merely alleges are held for the benefit of PdVSA" are smoke and mirrors and cuts against its standing to raise any arguments. *See* Motion, Dkt. 11 at 11. The agent or instrumentality standard was created to reach beyond the terrorists' efforts to stay in the shadows by using "straw persons" or other layers of affiliated companies and persons as fronts. As the Eleventh Circuit put it, "terrorist organizations such as FARC operate in the shadows out of necessity. For example, a corporation organized under Florida law will almost certainly not list FARC as a shareholder of record. Instead, it will operate through layers of affiliated individuals and front companies." *Stansell,* 771 F.3d at 732. The Eleventh Circuit has also recognized that terrorist and money laundering operations are "clandestine" such that a plaintiff can even establish the agent or instrumentality relationship as being indirect. *Id.* at 732, 742. In fact, the standard can be met even if the blocked party has never previously been linked to the terrorist party. *Id.* at 739 ("The Partnerships had not previously been directly linked to FARC by OFAC or any other executive or judicial authority.").[18] Thus, PdVSA may very well benefit from the subject blocked assets even if blocked assets are not held in its name. Indeed, BANA's response to Caballero's subpoena indicates that the subject blocked accounts were blocked due to an association with PdVSA.

### IV. Conclusion

Not even now—one-and-a-half (1 ½) years since PdVSA's abandoned its challenge in Caballero's state court action—does PdVSA raise any factual issue regarding its agent and instrumentality status. PdVSA seeks to intervene in this action to supposedly "rebut" the State

---

[18] Notably, the Western District of New York has echoed the Eleventh Circuit's analysis regarding the "clandestine' nature of terrorist parties and their agents." Decision and Order, *Caballero v. FARC, et al.,* No. 20-mc-00040-LJV (W.D.N.Y. Dec. 18, 2020), Dkt. 15 at 5.

Court Order on its agent and instrumentality status, yet, unsurprisingly, offers no evidence. And, as it attempts (and fails) to argue the merits of this case, it simultaneously and improperly refuses to submit to the full jurisdiction of this Court and to venue. Based on the foregoing, Caballero respectfully requests that the Court not grant PdVSA any of the relief it seeks, including its request to intervene. Should, however, this Court grant PdVSA's request for intervention (and it should not), Caballero respectfully requests that this Court overrule PdVSA's "jurisdictional defenses" and objections to venue, and require PdVSA to appear in this jurisdiction for any hearings, depositions, and other discovery, if necessary.

DATED: February 19, 2021

                                    Respectfully submitted,

                                    /s/ William N. Nettles
                                    William (Bill) Nettles
                                    SC Bar 65392
                                    Law Offices of Bill Nettles
                                    2008 Lincoln St
                                    Columbia, SC 29205
                                    803-960-1726
                                    bill@billnettleslaw.com

                                    Joseph I. Zumpano (Florida Bar Number: 0056091)
                                    Admitted Pro Hac Vice
                                    E-mail address: jzumpano@zplaw.com
                                    Leon N. Patricios (Florida Bar Number: 0012777)
                                    Admitted Pro Hac Vice
                                    E-mail address: lpatricios@zplaw.com
                                    ZUMPANO PATRICIOS, P.A.
                                    312 Minorca Avenue
                                    Coral Gables, FL 33134
                                    Telephone: (305) 444-5565
                                    Attorneys for Plaintiff Antonio Caballero

## CERTIFICATE OF SERVICE

We hereby certify that the foregoing document was filed this 19th day of February 2021 via CM/ECF and that copies were also emailed to the below:

Marcos D. Jiménez
Marcos D. Jiménez, P.A.
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Tel: 305-772-6026
Email: mdj@mdjlegal.com

Ellen Ross Belfer
LEON COSGROVE LLP
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone: (305) 570-3243
ebelfer@leoncosgrove.com

/s/ William N. Nettles
William (Bill) Nettles